**DiSABATINO BROTHERS, INC.,**
**Defendant Below, Employer,**
**Appellant,**

v.

**Charles J. WORTMAN, Plaintiff Below,**
**Employee, Appellee.**

Supreme Court of Delaware.

Submitted: June 16, 1982.
Decided: Nov. 26, 1982.

Carl Schnee (argued) of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for appellant.

Bartholomew J. Dalton (argued) of Brandt & Benson, Wilmington, for appellee.

Before HERRMANN, C.J., McNEILLY and QUILLEN, JJ.

QUILLEN, Justice:

The claimant, Charles Wortman, was struck on the head by the bucket of a backhoe while working for the employer, DiSabatino Brothers, Inc. Claimant was paid temporary total disability benefits pursuant to 19 *Del.C.* § 2324 under an agreement between the employer and the claimant. On August 9, 1979, employer filed a petition for termination of temporary total disability benefits, and, on June 17, 1980, a hearing was held at the Industrial Accident Board.

The Board found that claimant was not suffering from any continuing physical or mental injury because of the accident, and, therefore, terminated the claimant's temporary total disability benefits.

The claimant then filed an appeal to the Superior Court setting forth, in his briefs, four separate grounds for reversal. In its decision, except for the Board's findings pertaining to traumatic neurosis, the Superior Court found that there was more than substantial evidence to support the Board's findings of fact, and basically rejected three of the grounds raised by claimant. The Superior Court remanded the case, however, for clarification with respect to the one issue of traumatic neurosis. The employer brings this appeal.

There have been two oral arguments in this case. The first oral argument focused on the Court's inquiry, *sua sponte*, as to whether the appeal, in light of the Superior Court's remand, was an appeal from an interlocutory order. The Court directed and has received supplemental legal memoranda on this procedural issue. The Court then heard oral argument on the merits of the appeal.

Interlocutory appeals are now governed by Supreme Court Rule 42. Basically, the Rule accomplishes two objectives. First, in section (b), the Rule establishes the criteria to be applied in determining certification and acceptance of interlocutory appeals.[1] Second, the Rule establishes a special procedure for the certification of interlocutory appeals in the Trial Court and for this Court's acceptance or refusal of the interlocutory appeal. This Court has dismissed interlocutory appeals for failure to follow the procedural provisions of the Rule. *Julian v. State,* Del.Supr., 440 A.2d 990 (1982).

In the workmen's compensation area as well, this Court has recently said "an order of remand by the Superior Court to the Industrial Accident Board is an interlocutory and not a final order." *Taylor v. Collins and Ryan, Inc.,* Del.Supr., 440 A.2d 990 (1981). Upon further review, however, we find Delaware law has not been quite as settled as the summary *per curiam* opinion in *Taylor* suggests.

There are special factors involved in appeals from the Superior Court when that Court acts in its appellate capacity. We note just two. First, there is ambiguity as to whether such appeals are from "interlocutory orders of a trial court" as that language is used in the Rule.[2] Second, when

1.  The section reads:

    "(b) *Criteria to be Applied in Determining Certification and Acceptance of Interlocutory Appeals.* No interlocutory appeal will be certified by the trial court or accepted by this Court unless the order of the trial court determines a substantial issue, establishes a legal right and meets 1 or more of the following criteria:
    (i) Any of the criteria applicable to proceedings for certification of questions of law set forth in Rule 41; or

    (ii) The interlocutory order has sustained the controverted jurisdiction of the trial court; or
    (iii) The interlocutory order has vacated or opened a judgment of the trial court; or
    (iv) A review of the interlocutory order may terminate the litigation or may otherwise serve considerations of justice."

2.  Rule 42(a) reads:

    "(a) *Exercise of Jurisdiction.* The Court's jurisdiction to hear and determine appeals in civil cases from interlocutory orders of a trial court shall be exercised in accordance with this

the Board's decision finally determines the case and the Superior Court's remand re-opens it, a successful appeal in effect reinstates a final order.

But, having reviewed the situation, we are satisfied that, insofar as *Taylor* characterizes appeals from remand decisions as interlocutory, the all inclusive decision in *Taylor* is correct.[3] The *Taylor* decision subjects the appeal to the special criteria and procedural requirements of Rule 42. The *Taylor* decision should constitute notice to the Bar as to the general applicability of Rule 42 in this situation.

■ The present appeal was filed prior to the *Taylor* decision. In thoroughly reviewing the state of our law at that time, we find fairness requires consideration of this appeal on its merits. Notwithstanding the apparent foundation for *Taylor* in pre-Rule 42 cases, *McClelland v. General Motors Corporation,* Del.Supr., 214 A.2d 847 (1965) and *Cicamore v. Alloy Surfaces Company,* Del. Supr., 244 A.2d 278 (1968), we have found five pre-*Taylor* instances where we did not apply Rule 42 to appeals from Superior Court remands of Industrial Accident Board cases. Rather, evidently due to the special factors noted above, the appeal was heard in normal course as if from a final order and disposed of by order. In light of this uncertainty in practice and in view of the fact that an interlocutory review in the present case is, in our opinion, warranted to foreclose excessive appellate intermeddling in factual matters, we will determine the present case on the merits. But, in so doing, as to the applicability of Rule 42, we reaffirm *Taylor* for all cases filed after its December 30, 1981 date. Moreover, it is the Court's intention to confirm this opinion by amending Rule 42 in order: (1) to make it clear that it applies to a trial court acting in an appellate capacity; and (2) to make it

rule as to certification and acceptance of interlocutory appeals."

**3.** We interpret *Taylor* as applying to all remands except remands for "purely ministerial" functions. *McClelland v. General Motors Corporation,* Del.Supr., 214 A.2d 847, 848 (1965).

clear that eligibility for interlocutory review under Rule 42 is not foreclosed by a Superior Court remand when the administrative agency has determined a substantial issue and established a legal right, as the Board did in this case by its final determination before appeal to the Superior Court.[4]

Turning to the merits of this case, we review the Superior Court's determination that the Board's findings relating to the issue of traumatic neurosis requires clarification. The employer argues no such clarification is required. We agree.

The Board's conclusions of fact and rulings of law are brief. The Board said:

"Based upon the evidence received the Board finds, that Charles J. Wortman was injured in a compensable industrial accident on July 7, 1978 while in the employ of DiSabatino Brothers. That the accident occurred within the scope of employment.

That Mr. Wortman is no longer physically disabled as a result of his industrial accident of July 27, 1978. The Board finds that Mr. Wortman has not suffered any continuing physical or mental injury because of that accident. The medical experts of the carrier have testified, and the Board agrees, that the claimant complains of symptoms that do not correspond to any recognizable physical or mental damage. The Board is convinced that the claimant is not to be believed when he urges us to find that he is still totally disabled. The Board also finds Mr. Wortman's psychological complaints incredible.

Additionally, we find that Mr. Wortman is fully capable of returning to the work force in many capacities. He has had one year of college and has taken extension courses at the University of Delaware. He is not a displaced worker.

**4.** A similar situation exists when a trial judge enters an order affecting a jury verdict which would otherwise terminate the case. The amended rule will attempt to cover that situation as well. It should be noted that, with respect to the second clarifying amendment, the sweeping language of the *Taylor* opinion is being modified by this opinion.

[*Duff v. Chrysler Corporation,* Del.Super.] 301 A.2d 309 (1972), *revs'd on other grounds,* Del.Supr., 314 A.2d 915 (1973). This man is able to resume gainful employment but he has made no reasonable effort to do so.

Therefore, the carrier's petition to terminate is granted from the date of filing."

The Superior Court reviewed the factual findings of the Board and concluded:

"It is difficult to understand the reasoning behind these findings. As stated, they are not substantially supported by the record.

First, the Board 'agrees' with the testimony of the employer's medical experts 'that the claimant complains of symptoms that do not correspond to any recognizable [mental] damage.' The problem here is that two of these experts expressly stated that a psychological problem could be involved. Although both testified that claimant was malingering, neither was willing to express an opinion on claimant's psychological disability or to rule it out. Clearly, this testimony does not support this particular finding of the Board.

Second, after agreeing with employer's witnesses, who expressed no opinion as to claimant's psychological disability, the Board did not expressly reject the testimony of Dr. Pereira-Ogan, who gave considerable testimony tending to support the contention of a psychological disturbance. Instead, it rested its decision on claimant's insincerity.

The Board's reasoning appears to be that Dr. Pereira-Ogan's conclusions are invalidated since they depend on claimant's sincerity. The problem with this reasoning is that Dr. Pereira-Ogan arrived at his conclusions through tests designed to counteract insincerity. In summary, it is clear that this issue requires clarification."

The question on appeal is whether the Board's decision on the issue of traumatic neurosis requires clarification or, to put it another way, whether the decision has substantial support in the record as it stands.

One of the employer's experts, Dr. T.S. Vates, a neurologist, analyzed an inconsistent test result pattern and clearly concluded that "Other than [a need for bifocals or a visual lens correction] I find no evidence of a neurological illness in this man, at this time." The unusual patterns, he said, could be explained "on either psychological terms or on voluntary simulation". Voluntary simulation means "[d]eception" and the claimant fits more "[i]nto the simulation [picture]". He believed the claimant was "malingering". While a neurosurgeon witness for employer deferred on giving a precise answer to the psychological or deception issue, the tenor of his testimony was rather a natural reluctance to call the claimant a malingerer. He "hope[d] [the claimant] is hysterical rather than malingering". But, the neurosurgeon had testified earlier it was "fair to say . . . that it is inconsistent with any medical condition to have all of those symptoms in one man at one time".

The claimant presented testimony that his ailments or disabilities stemmed from traumatic neurosis. His evidence included the testimony of Dr. Pereira-Ogan, the only psychiatrist who testified, who has a subspeciality in forensic psychiatry which includes determinations of whether persons are suffering from traumatic neurosis or malingering. As the Superior Court noted, and the claimant has emphasized, Dr. Pereira-Ogan conducted tests, including the Minnesota Multiphasic Personalty Inventory, designed to weed out malingerers.

■ There is no dispute as to the law. Traumatic neurosis is recognized as a basis for a Workmen's Compensation claim. *Fiorucci v. C.F. Braun & Co.,* Del.Super., 173 A.2d 635, 636–37 (1961); *Sturgill v. M. & M., Inc.,* Del.Supr., 329 A.2d 360, 361 (1974). The position of the Superior Court and this Court on appeal is to determine whether or not there is substantial evidence to support the findings of the Board. *General Motors v. Freeman,* Del.Supr., 164 A.2d 686, 689 (1960). The courts on appeal do not sit as triers of fact to weigh evidence and deter-

mine credibility. *Johnson v. Chrysler Corporation,* Del.Supr., 213 A.2d 64, 66 (1965). It is settled in Delaware that an experienced practicing physician is an expert, and it is not required that he be a specialist in the particular malady at issue in order to make his testimony as an expert admissible. *Delmarva Power & Light v. Stout,* Del. Supr., 380 A.2d 1365, 1369 (1977); *Board of Public Education in Wilmington v. Rimlinger,* Del.Supr., 232 A.2d 98, 100 (1967); *Drucker v. Philadelphia Dairy Products Co., Inc.,* Del.Super., 166 A. 796, 798 (1933).

■ The Superior Court under the statute "may reverse, affirm or modify the award of the Board or remand the cause to the Board for a rehearing." 19 *Del.C.* § 2350(b). In this instance, the Superior Court remanded the case for "clarification" stating that the findings "[a]s stated, . . . are not substantially supported by the record." The Superior Court's conclusion seems to suggest that the Board could have reasonably denied the claim but not on the basis of the reasons given. The opinion appears directed primarily to the fact that the Board did not deal expressly with the testimony of Dr. Pereira-Ogan and the "tests designed to counteract insincerity." In short, the Superior Court seems to recognize the Board was free to disregard such testimony but, if it did, it had to express itself clearly, including some direct comment on the tests used by Dr. Pereira-Ogan.

As we view the case, the evidence was definitely in conflict and, the substantial evidence requirement being satisfied either way, the Board was free to accept the testimony of Dr. Vates, the employer's expert neurologist, over contrary opinion testimony. *General Motors v. Veasey,* Del.Supr., 371 A.2d 1074, 1076 (1977). In our judgment, the Board clearly did so: (1) "Mr. Wortman has not suffered any continuing . . . mental injury because of that accident"; (2) "The medical experts of the carrier have testified, and the Board agrees, that the claimant complains of symptoms that do not correspond to any recognizable . . . mental damage"; (3) "The Board is convinced the claimant is not to be believed

when he urges us to find that he is still totally disabled"; and (4) "The Board also finds Mr. Wortman's psychological complaints incredible."

The clear implication of these conclusions is that the opinion of Dr. Pereira-Ogan and the tests giving rise to such conclusions were rejected. The Board also had some common sense evidence which showed, notwithstanding the pain alleged, the claimant played some tennis, drove a car, hit some golf balls, and walked a normal gait outside Dr. Vates' office as opposed to a labored gait in the office shortly before. The Board, unlike the Superior Court and this Court, heard and saw the claimant as a witness. On the subject of total disability, the Board was "convinced" the claimant was "not to be believed".

The question then becomes whether the clear and firm decision of the Board should be remanded for a further hearing solely because the Board did not say why it rejected the test supported conclusions of the claimant's psychiatrist. It would of course be a better record if the lay Board members could authoritatively state in a single statement in medical terms why they had not been persuaded by Dr. Pereira-Ogan's tests, diagnosis and conclusions. But perhaps they were not able to be that precise. The simple fact seems to be that they found the counterapproach and countertestimony of Dr. Vates to be persuasive. The Board members accepted Dr. Vates' testimony, as enhanced by the employer's other medical testimony and by their evaluation of the claimant's credibility. As the triers of fact, they were entitled to do just that. No further clarification is required.

The decision of the Superior Court is reversed and the decision of the Industrial Accident Board is reinstated.