# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MICHAEL H. MOORE, )
)
    Claimant Below – Appellant, )
)   **C.A. No.: N20A-07-013 FJJ**
v. )
)
**HERITAGE BUSINESS SYSTEMS,** )
)
    Employer Below – Appellee. )

Submitted: March 17, 2021
Decided: April 15, 2021

## UPON CONSIDERATION OF APPELLANTS APPEAL OF THE DECISION OF THE INDUSTRIAL ACCIDENT BOARD, AFFIRMED

## OPINION AND ORDER

*Emily P. Laursen, Esquire*, Kimmel Carter Roman Peltz & O'Neill, P.A., 56 W. Main St., Newark, DE, 19702, *Attorney for Michael H. Moore*

*Andrea C. Panico, Esquire*, Tybout Redfearn & Pell, 750 Shipyard Drive, Suite 400, Wilmington, DE 19801, *Attorney for Heritage Business Systems*

**Jones, J.**

Appellant Michael Moore ("Moore") has brought this appeal from a decision of the Industrial Accident Board ("Board" or "IAB") before the Superior Court. Moore is asking this Court to reverse a decision of the IAB which found that Moore had failed to meet his burden to prove that he had suffered a permanent injury to his cervical spine as a result of an injury he suffered while working for Heritage Business Systems ("HBS"), his former employer and the Appellee in this case. Moore claims that the IAB could not have reached its conclusion based on the evidence which was presented at Moore's hearing before the Board.

The record reflects that the IAB's factual determinations were based on substantial evidence, and Moore has not alleged that the IAB committed any errors of law in its decision. Therefore, the IAB's decision is **AFFIRMED**.

## FACTUAL BACKGROUND

The following statement of facts is based on the undisputed facts in the briefing submitted by both parties for this motion and the record below.

Until suffering a work-related injury in 2017, Moore was employed by HBS as a Kent County Service Technician.[1] Moore's job duties included calling customers, calling dispatchers, ordering parts, and traveling to various worksites to service copy machines, printers, and other equipment.[2]

---

[1] Appellant's Brief (hereinafter "Moore Br.") at 1.
[2] Moore Br. at 1.

On January 18, 2017, Moore traveled via automobile to a YMCA located in Wilmington, Delaware, for an on-site service call.[3] While Moore was walking towards the worksite, an unidentified man (the "assailant") approached Moore asking for spare change. Moore told the assailant that he did not have any spare change, but the assailant continued to follow Moore. Eventually, the assailant ran behind Moore, jumped on him, and began attacking Moore. The assailant choked Moore, hit him on the top of the head with a piece of metal, forced Moore to his knees and punched him in the face. Moore retaliated by punching the assailant, which caused the assailant to flee. Moore's car keys were in his hand when he punched the assailant, and Moore's punch caused his keys to penetrate one of the fingers on Moore's right hand. After the assailant fled, Moore returned to his car and called the police.

Following the attack, Moore continued to work because "he had just been hired" and "didn't want to make a big issue" out of the attack.[4] Moore did, however, begin visiting physicians to examine the injuries he sustained. On January 23, 2017, Moore received an evaluation from Dr. Ahmed of Doc-in-a-Box. During his initial visit to Dr. Ahmed, Moore completed a registration form in which he complained of hand, head, neck and back pain. Following his initial evaluation, Moore visited Dr.

---

[3] Moore Br. at 1.
[4] Industrial Accident Board Decision on Petition to Determine Additional Compensation Due (Jul. 08, 2020)(hereinafter "IAB Op.") at 6.

Ahmed several more times, and Dr. Ahmed initially focused on treating the injury to Moore's right hand, which had developed a bacterial infection. Moore received an MRI scan in April of 2017 which showed "multiple cervical disc herniations from C3-4 through C7-T1."[5]

In the months following the attack, Moore experienced two additional incidents. First, Moore experienced a lower back injury in May of 2017 as a result of lifting a box.[6] Next, Moore was involved in a motor vehicle accident on August 16, 2017.[7] Moore reported that this accident caused an increase in neck pain, headaches, and a pain to his right shoulder.

Moore began receiving treatment from Dr. Andrew Robinson in February of 2018.[8] Dr. Robinson is a board-certified medical doctor licensed to practice in Maryland and Delaware who specializes in shoulder and sports medicine. Moore informed Dr. Robinson about both the injuries he sustained as a result of the attack in January of 2017 as well as the August 2018 motor vehicle accident. Dr. Robinson provided testimony on Moore's behalf at his hearing before the IAB. In March of 2020, Moore received an evaluation from Dr. Andrew Gelman on behalf of HBS "to address the nature and extent of Claimant's injuries as a result of the work accident

---

[5] Moore Br. at 4.
[6] App. Ex. E (Dr. Gelman Transcript, hereinafter "Gelman Tr.") at E-56.
[7] Moore Br., at 6.
[8] IAB Op. at 3.

4

and to provide an opinion regarding permanent impairment to the cervical spine."[9] Dr. Gelman is a board-certified physician who specializes in orthopedic surgery. Moore saw Dr. Gelman for one additional evaluation.[10] Dr. Gelman reviewed Moore's medical records in connection with his visitation and provided testimony on behalf of HBS at Moore's IAB hearing. Dr. Gelman testified that Moore's cervical spine injury was not attributable to the January 2017 attack.

## PROCEDURAL HISTORY

In September of 2019, Moore filed a Petition to Determine Additional Compensation Due, seeking a finding that he experienced a 26% impairment to his cervical spine as a result of the January 2017 attack he suffered while working for HBS.[11] HBS disputed Moore's claim of permanent injuries to his spine as a result of the January 2017 attack. The IAB held a video hearing on the matter in June of 2020. During the hearing, Dr. Gelman provided expert medical testimony on behalf of HBS, while Dr. Robinson provided testimony on behalf of Moore. Moore also testified at the hearing on his own behalf. On July 8, 2020, the Board issued a Decision on Moore's Petition to Determine Additional Compensation Due (the "Decision.") The Board's Decision denied Moore's claim and found that he had not met his burden of proving either the extent of his cervical spine injury or that his

---

[9] Defendant's Reply Br. ("Def.'s Br.") at 7.
[10] IAB Op. at. 3-4 ("Claimant agreed that he saw Dr. Gelman on two occasions.")
[11] IAB Op. 2.

permanent injuries were caused by the January 2017 attack rather than other factors. Moore filed a Notice of Appeal of the Decision to the Superior Court, and the parties submitted briefing on the matter.

## STANDARD OF REVIEW

In its capacity as an appellate court for the IAB, the Superior Court's task is limited to determining whether the Board's decision was supported factually by substantial evidence and free from errors of law.[12] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] Applying the substantial evidence standard "[r]equires the reviewing court to search the entire record to determine whether, on the basis of all the testimony and exhibits before the agency, it could fairly and reasonably reach the conclusion that it did."[14] The Superior Court will give factual decisions of the Board substantial deference, and will consider the record in a light most favorable to the Board. In so doing, the Superior Court will not weigh the evidence presented below, evaluate the credibility of witnesses, or make its own factual findings.[15] On appeal, this Court will not substitute its judgement for that of the Board, even if the

---

[12] *DiSabatino Bros., Inc. v. Wortman*, Del. Supr., 453 A.2d 102, 105 (1982).
[13] *Bullock v. K-Mart*, 1995 WL 339025, at *2 (Del. Super. May 5, 1992).
[14] *National Cash Register v. Riner*, Del. Supr., 424 A.2 669, 674, 675 (1980).
[15] *DeAndre Christopher v. Unemployment Insurance Appeal Board* (Del. Super. Oct. 28, 2020).

reviewing judge would have come to a different conclusion on the merits.[16] Alleged errors of law by the Board are reviewed *de novo*.

## ANALYSIS

In this case, Moore claims that "[the] Board could not have reached the conclusions it did based upon the testimony and exhibits before it at the hearing on June 4, 2020." In other words, Moore asks this Court to conclude that the Board made an error in its factual determinations rather than an error of law. The factual disputes in this case ultimately come down to conflicting testimony by both Moore and the medical experts who testified at the hearing regarding the cause and extent of Moore's injuries.

As Claimant, Moore bore the burden of proving to the IAB that he had suffered a 26% permanent impairment to his cervical spine.[17] Moore presented testimony from Dr. Robinson that he had suffered a 26% permanent impairment to his cervical spine, while HBS presented testimony from Dr. Gelman that Moore's cervical spine injury was only a 6% permanent impairment and that the injury was not causally related to the attack he suffered in January of 2017. The Board is free to choose between conflicting expert testimony, but must provide "specific relevant reasons" based on evidence in the record for accepting one expert's testimony over

---

[16] *Warren v. Amstend Industries, Inc.,* 2020 WL 4582504 (Del. Super. 2020).
[17] IAB Op. at 20.

7

the other.[18]  The Board has discretion to evaluate the credibility of Moore's testimony as the Claimant.[19]

The Board concluded that Dr. Gelman's testimony was more persuasive than Dr. Robinson's testimony, and that Moore had not met his burden of proving a 26% permanent impairment to his cervical spine and said permanency was related to his work injury in January of 2017.[20]  The Board evaluated Moore's testimony and concluded that it "lacked credibility. . . [Moore's] testimony does not evidence someone who has a 26% impairment."[21]  In determining that Moore's testimony was not credible, the Board noted that Moore "has no work or driving restrictions and can work essentially the same job he did prior to the accident, but in a single location."[22]  The Board also noted that Moore did not seek treatment for neck or back injuries until some time after his motor vehicle accident, and that Moore's initial treatment following the January 2017 attack focused on his hand.[23]  Furthermore, the IAB noted that "initial examinations [for Moore] appeared to show normal findings, including range of motion, for the neck."[24]  Dr. Gelman noted this in his testimony, and further testified that if Moore had acute disc herniations, he

---

[18] *Elliot v. State*, 2014 WL 3049504 (Del. Super. 2014), at *4.
[19] *Clements v. Diamond State Port. Corp.*, 831 A.2d 870, 878 (Del. 2003).
[20] IAB Op. at 21 (citing *DiSabatino Bros., Inc. v. Wortman,* 453 A.2d 102 (Del. Super. 2016)) (Industrial Accident Board is free to choose between conflicting medical opinions.)
[21] IAB Op. at 21.
[22] IAB Op. at 21.
[23] IAB Op. at 21.
[24] IAB Op. at 21.

8

would have displayed severe symptoms immediately.[25]  The Board also noted that Moore's complaints of back pain "only surfaced after a documented lifting incident [i.e., the injury Moore suffered in May of 2018 as a result of lifting a heavy box.]"[26] For these reasons, the Board favorably evaluated Dr. Gelman's testimony that he "could not relate the impairment to the work incident with reasonable medical probability."[27]

The Board further did not find Dr. Robinson's testimony on behalf of Moore to be credible.[28]  In evaluating Dr. Robinson's testimony, the Board noted that "[Dr. Robinson] only provided a whole person rating [for Moore's spinal injury]" while the relevant statute "requires a rating specific to a body part to calculate benefits."[29]

Moore's Brief in this case identifies three specific alleged defects in the brief he filed in this appeal, which are addressed below.  None of these alleged defects provides a basis for overturning the IAB's Decision.

---

[25] IAB Op. at 21.
[26] IAB Op. at 21.
[27] IAB Op. at 22.
[28] Moore's filed a Reply Brief in this case attempting to distinguish the facts of his case from *Clements v. Diamond State Port. Corp.* (831 A.2d 879) (Del. 2003). HBS cited Clements for the proposition that "If a medical expert's opinion depends primarily on the credibility of claimant's subjective complaints and the Board determines that those subjective complaints are not credible, the Board may reject the medical expert's conclusion." While it is true that Clements contains a number of factual distinctions from the present case, these distinctions are immaterial. It is within the Board's discretion to make determinations regarding the credibility of expert medical testimony. While it is true that Dr. Gelman "never [testified] that [Moore suffered] no impairment" to his cervical spine and did not "state… what percentage of [Moore's impairment was attributable] to which accident," it does not follow that "the Board's failure to avoid a permanent impairment rating attributable to the work incident [is inconsistent with] the testimony before the Board" because the Board retains discretion over the credibility of the expert witnesses and Moore's personal testimony.
[29] IAB Op. at 21.

First, Moore states that "at the outset, there is no dispute that Claimant injured his cervical spine when he was assaulted in the course and scope of his employment."[30] While this is correct, it is not sufficient to meet Moore's burden in demonstrating the permanency of his injury or the permanency's relationship to the work accident. Moore claims that he suffered a 26% impairment to his cervical spine as a result of the assault which took place in January of 2017. Moore's burden before the Board was not merely to prove that he suffered *some* degree of injury to his cervical spine as a result of this attack, but was instead to prove that his injury left him with a permanent impairment of his cervical spine as a result of the January 2017 attack. As described below, there was substantial evidence in the record to justify a conclusion consistent with Dr. Gelman's testimony.

Second, Moore disputes that the record supports the Board's determination that Moore failed to prove that his injury was related to the January 2017 attack based on the Board's determination that Moore had a "delay in the onset of his cervical spine symptoms."[31] The Board's decision states that "[Moore] had a delay in [the] onset of his cervical spine symptoms and then following improvement he was in [a] motor vehicle accident [in August of 2017.]"[32] In other words, the Board determined that the August 2017 motor vehicle accident rather than the January 2017

---

[30] Moore Br. at 15.
[31] Moore Br. at 16 (citing IAB Op. at 22.)
[32] IAB Op. at 22.

attack caused the cervical spine injury at issue in this case. Moore claims that the record does not support this conclusion because his initial intake notes from Dr. Ahmed indicate that he suffered "injuries to his hand, head, neck and back."[33]

While Dr. Ahmed's initial intake notes reflect the fact that Moore complained of "head, neck and back" injuries in his initial visits, this evidence does not contradict the Board's determination that Moore had a "delay in the onset of cervical spine symptoms" that makes the causal connection between the attack and his spinal injury questionable. Dr. Gelman testified that if Moore had experienced the serious injuries he alleges to his neck, back, and head as a result of the attack (as opposed to the motor vehicle accident several months later or the injury he suffered lifting a heavy object), then presumably he would have complained about these injuries to Dr. Ahmed in greater detail during his initial visit, and Dr. Ahmed's notes would contain a more detailed description of the injuries to these parts of Moore's body.[34] This testimony constitutes substantial evidence supporting the Board's determination on this point, and this does not offer a basis to overturn the Board's decision.

Finally, Moore argues that the Board ignored evidence that contradicts the notion that his cervical spine injury was caused by either the May 2017 lifting

---

[33] Moore Br. at 15.
[34] Gelman Tr. At 14-17.

incident or the August 2017 automobile accident. Specifically, Moore points to an MRI which he received in April of 2017, which "predate[s] the motor vehicle incident" and shows "evidence [of] herniations at several levels in the cervical spine."[35] According to Moore, "[f]ailure to attribute the impairment to the cervical spine disregards *entirely* the objective MRI findings on the April 2017 MRI for which there is no other source."[36] Moore further argues that "noting in [his] medical history even suggested he had cervical pain prior to this work injury [i.e., the January 2017 attack]. . ."[37]

Moore's contention is incorrect, and there is evidence in the record indicating that Dr. Gelman reviewed the MRI evidence and concluded that it did not demonstrate a causal connection between the January 2017 attack and Moore's cervical spinal injuries. Dr. Gelman's testimony at the IAB hearing addressed the effect of the April 2017 MRI on his conclusion that the January 2017 attack did not cause Moore's cervical spinal injuries:

> **Q:** In terms of the 4/21/17 MRI of the cervical spine, can you describe for the Board the findings that were noted based upon that MRI study?
> **A: [Dr. Gelman]**: The report references a number of findings, the report per a Dr. Hartker. He recorded a 20 percent loss of height at the C6 vertebral body, with no vertebral body edema or recent compression fracture. He also recorded some synovial fluid changes and synovitis with edema at the C3-C4 level; a one to two-millimeter disc herniation at the C3-C4 level; the C4-C5 level, the C6-7 level and

---

[35] Moore Br. at 17.
[36] Moore Br. at 17.
[37] Moore Br. at 18.

the C7-T1 level. At the C3-4 level, he recorded that there was some spinal stenosis encroaching the neuro-foramina. At the C6-7 level, he noted some displacement of the right and left C7 nerve roots. So he did record an abundance of various MR features.

> **Q:** An in terms of the features described in the study, what is your opinion relative to whether or not those documented features resulted [from] the assault that occurred in January 2017?

> **A:** In my opinion, the features are incidental to the incident at issue . . . looking at these changes, for example, the 20 percent loss of height at C6 suggests a very remote issue. Other changes. . . would further suggest and reflect that these are chronic, pre-existing issues predating the January 2017 time frame.

> **Q:** Is there anything documented in the MRI report that would tell the Board that any of these findings or changes resulted from the January 2017 incident?

> **A:** Well, the Board has to take into consideration the early clinical documentation. In other words, if somebody herniated four discs acutely, there would be some serious symptomatology that that individual would report and that the clinician would document. . . there's nothing about symptomatology with regards to the neck for approximately three months [in the Doc-in-a-Box records], after which the cervical spine becomes an issue. So that's not consistent with the mechanism of an acute herniating at all. The Board needs to take that home, realizing that the clinical information supersedes imaging.[38]

Dr. Gelman's testimony before the Board, in other words, explicitly addressed the April 2017 MRI and explained why he did not believe it provided a basis for attributing Moore's cervical spinal injuries to the January 2017 attack. This testimony represents substantial evidence in the record which is sufficient to justify the Board's conclusion, and it is not the role of this Court in its appellate capacity to

---

[38] Gelman Tr. At 14-17.

weigh the significance of this testimony evaluate its credibility or to substitute its own judgment for that of the IAB.[39]

## **CONCLUSION**

The record in this case provides substantial evidence for the findings of fact contained in the Board's July 2020 Decision. In light of the evidence in the record justifying the IAB's Decision and the absence of any errors of law, the IAB's Decision is hereby **AFFIRMED**.

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

/jb

cc: File&Serve Express

---

[39] See *Reese v. Home Budget Center*, 619 A.2d 907, 910 (Del. 1992) (Board is free to choose between conflicting medical expert opinions so long as there is substantial evidence to support the finding.)

14