# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TY JASON, | ) | |
| | ) | |
| Appellant/Employee-Below, | ) | |
| | ) | |
| v. | ) | C.A. No. N22A-06-004 VLM |
| | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Appellee/Employer-Below. | ) | |
| | ) | |
| | ) | |

## ORDER

Submitted: December 6, 2022
Decided: March 13, 2023

*Upon Consideration of Appellant's Appeal of the Decision of the Industrial Accident Board*, **AFFIRMED**.

Andrew Carmine, Esquire, Elzufon Austin & Mondell, Wilmington, DE. *Attorney for Appellant Ty Jason*.

Keri L. Morris-Johnston, Esquire, Marshall Dennehey Warner Coleman & Goggin, Wilmington, DE. *Attorney for Appellee, the State of Delaware*.

**MEDINILLA, J.**

# I.    INTRODUCTION

Claimant-Appellant Ty Jason ("Claimant") challenges the decision of the Industrial Accident Board (the "Board") that denied, in part, his petition for worker's compensation benefits. Claimant argues the Board erred in accepting Employer's expert opinion that relied on a lack of medical treatment where the lack of said treatment was due to Employer's failure to report Claimant's injury. Upon consideration of the arguments, submissions of the parties, and the record in this case, the Board's decision must be **AFFIRMED.**

# II.    FACTUAL AND PROCEDURAL HISTORY[1]

1.    On April 7, 2014, Claimant was injured while working for the State of Delaware ("Employer") after he fell from a stool when shredding confidential documents.[2] He immediately made a telephone call to his supervisor to notify him of his fall.[3] Two days later, Claimant also emailed the supervisor stating he caught himself with his left hand when he fell to the ground,[4] and "was okay."[5]

2.    That same month, Claimant also emailed his supervisor to obtain a workers' compensation claim number.[6] In that email, Claimant, used the singular

---

[1] The recitation of the facts is based upon the submission of the parties, including the transcript from the IAB hearing on May 20, 2022.
[2] Industrial Accident Board's Transcript, at 15 [hereinafter IAB Transcript].
[3] *Id.* at 17–18.
[4] *Id.* at 77.
[5] *Id.* at 20–21.
[6] *Id.* at 23, 77.

form of the word "hand" and "shoulder," and indicated that he "[c]aught [himself] with [his] hand. And it made [his] shoulder feel weird."[7] After being instructed by his supervisor to report the accident to his manager, he was provided with a formal injury report form in May 2014.[8] In his communication with the manager, Claimant again used a singular form of the word "hand" and "shoulder."[9] He claims he completed the form and submitted it as instructed.[10] The Employer did not report a claim to the workers' compensation carrier, nor did Claimant receive any communication from Employer about his submission.[11]

3.  Medically, within three weeks of the fall, Claimant saw Dr. Doug Palma, an orthopedic surgeon, for pain in his shoulders and neck.[12] Dr. Palma ordered two MRIs, but only one was conducted because Claimant was told by his health insurance carrier that he would be responsible for payment as this was a work-related injury.[13] Therefore, he underwent an MRI of only the left shoulder in August 2014.[14] Dr. Palma opined that Claimant had suffered both cervical and *left* shoulder

---

[7] *Id.*
[8] *Id.* at 25–26.
[9] *Id.* at 26–27; 80–81.
[10] *Id.* at 28.
[11] *Id.* at 28, 80.
[12] *Id.* at 22.
[13] *Id.* at 28–30.
[14] *Id.* at 28–30, 80–84. Claimant did not testify whether the other MRI was concerning his right shoulder or cervical spine. *See Id.* Although Claimant claims in his appellate brief that Dr. Palma ordered MRIs of both Claimant's left and right shoulders, neither the Transcript nor Dr. Eskander deposition states so. *Compare* Appellant's Opening Brief (citing Transcript, at 28; Eskander, at 10)*, with* IAB Transcript*, and* Dr. Eskander's Deposition, at 10 (stating that Dr. Palma ordered "MRIs of both areas, the cervical spine and the [left] shoulder.").

injuries from the fall.[15]

4. In February 2015, Claimant visited another spine specialist, Dr. Adam Ginsberg.[16] Claimant did not reference the 2014 work accident in his intake form.[17] For one month, Claimant received physical therapy for both shoulders on Dr. Ginsberg's referral. [18] Claimant's health insurance denied coverage for this treatment because—according to Claimant—the treatment was for a work-related injury.[19] Claimant stopped physical therapy for fear of the financial responsibility of out-of-pocket payments.[20] As it turns out, Claimant did not have to reimburse the health insurance carrier, nor was he required to make out-of-pocket payments for treatment he received in 2014 and 2015.[21]

5. In September of 2019, Claimant continued to visit his primary care physician.[22] He reported he was running every other day and alternating his physical activity with bike riding.[23] He also continued to work and treat with Aleve when he experienced intermittent pain in the neck and shoulder.[24] In that same year, he

---

[15] IAB Transcript, at 78–79 ("The Impression . . . was 'cervical degenerative disc disease as well as left shoulder plank . . . .'") (emphasis added).
[16] *Id.* at 93.
[17] *Id.* at 93–94.
[18] *Id.* at 30–31, 33, 94.
[19] *Id.* at 30–31, 33.
[20] *Id.* at 30–31, 33.
[21] *Id.* at 87–88.
[22] *Id.* at 119.
[23] *Id.* at 38, 89
[24] *Id.* at 40–41, 109.

returned to Dr. Palma due to numbness in his arms and hands that affected his ability to perform some tasks at work.[25]

6.     In 2019, Claimant emailed Employer's human relations department and provided a full explanation with respect to his 2014 work accident, including his 2014 communications with his supervisor and manager, and the completion of an injury report form in 2014.[26]  Claimant testified he was instructed to change the date to 2019 in a new injury report form.[27]  In 2019, Employer denied the claim based on the expiration of the two-year statute of limitations.[28]  Employer has since waived its statute of limitations defense.[29]

7.     Despite the denial of both health insurance and worker's compensation benefits, Claimant underwent multiple surgeries to include bilateral carpal tunnel releases, bilateral shoulder surgeries, and a neck surgery.[30]  He continued with physical therapy and made out-of-pocket payments in 2020 and 2021.[31]

8.     On October 22, 2021, Claimant filed a Petition for Compensation Due petition seeking a determination of compensability related to Claimants' bilateral wrists, shoulders, and cervical spine, as well as the payment of medical expenses

---

[25] *Id.* at 44–45.
[26] *Id.* at 47–48.
[27] *Id.* at 49–51.
[28] *Id.* at 54–57.
[29] Appellant's Opening Brief, at 1.
[30] IAB Transcript, at 61–63, 100.
[31] *Id.*

and periods of temporary total disability benefits.[32]

9. On May 20, 2022, the Board conducted a hearing on Claimant's petition. In addition to testimony from Claimant, the Board also considered the opposing opinions of the expert witnesses, Drs. Mark Eskander, on behalf of Claimant and Andrew Gelman, on behalf of Employer.

10. Dr. Eskander opined that Claimant reported that he fell forward with his arms out to brace himself, and a chain of kinetic energy went up through the upper part of his body.[33] Thus, Dr. Eskander opined that all the injuries related to Claimant's bilateral wrists, bilateral shoulders, and neck were causally related to the 2014 work accident,[34] and that the medical treatment to address his injuries had been reasonable.[35] On cross-examination, the doctor conceded that he relied on the history provided by Claimant, who reported he had fallen on both hands.[36] He testified that if Claimant had instead fallen only on his left hand, he would have opined that the left shoulder injury was caused by the work accident while the right shoulder symptoms were more likely due to a degenerative mechanism.[37]

11. Employer's expert, Dr. Gelman, opined that Claimant strained or

---

[32] Industrial Accident Board's Decision, at 2 [hereinafter IAB Decision]. The parties stipulated to resolve once a determination is made as to which injuries may be compensable. *Id.* The Employer did not challenge the claim on a statute of limitations defense. *See* Joint Stipulation of Facts.
[33] IAB Transcript, at 132.
[34] *Id.* at 131–32.
[35] *Id.* at 134.
[36] *Id.* at 156.
[37] *Id.*

sprained his left shoulder and neck from the work accident, and only the treatment related to the left shoulder and neck through early spring of 2015 was causally related to the accident.[38] He further opined that Claimant's right shoulder injury or carpal tunnel injuries were not related to the work accident.[39] Dr. Gelman explained that Claimant had very little treatment substantiating the causal nexus between the surgeries for both shoulders and neck, and the left shoulder MRI showed a progression attributable to nature,[40] (i.e., degenerative and not work-related). Dr. Gelman also acknowledged that he had reviewed some correspondence related to Claimant's inability to obtain treatment due to insurance issues.[41]

12. On May 31, 2022, the Board granted, in part, and denied, in part, Appellant's Petition.[42] The Board, in relevant part, found that Claimant met his burden of proof by a preponderance of evidence that (1) he suffered a work accident while employed with the State of Delaware, (2) the accident resulted in a left shoulder rotator cuff tear, and (3) the accident resulted in strain/sprain injury to the neck, which resolved by mid-2015.[43] The Board denied his claims related to his bilateral carpal tunnel and right shoulder injuries.[44]

---

[38] Dr. Gelman's Deposition, at 31–33, 45.
[39] IAB Transcript, at 170–72.
[40] *Id.* at 159–72.
[41] Dr. Gelman's Deposition, at 49–50.
[42] IAB Decision, at 25–30.
[43] *Id.* at 24–28.
[44] IAB Decision, at 25.

## III. PARTIES' CONTENTIONS

13.     Claimant does not challenge the Board's partial ruling in his favor. He argues that the Board erred when it ruled against him and found that (1) the treatment for cervical strain/sprain after mid-2015 was not related to his fall during his work in 2014; and that (2) the 2014 work accident did not result in an injury to his neck, right shoulder, and hands.[45] He contends this determination was based on insubstantial evidence; the Employer's expert relied on a lack of medical treatment and ignored the fact that Claimant was prevented from treating due to Employer's failure to report the accident.[46]

14.     Employer maintains that the Board's decision is free from legal error and supported by substantial evidence when it found that Claimant only sustained work injuries related to the left shoulder and the cervical spine that resolved in the spring of 2015.[47]

## IV. STANDARD OF REVIEW

15.     On appeal from the Board, this Court's role is to determine whether substantial evidence exists to support the Board's decision, and to examine the Board's findings and conclusions for legal error.[48] The parties do not raise any legal

---

[45] Claimant's Opening Brief, at 15–20.
[46] *Id.*
[47] Employer's Answering Brief, at 11–14.
[48] *Harasika v. State*, 2013 WL 1411233, at *3 (Del. Super. Feb. 28, 2013).

issues in this appeal. Thus, the only issue in this appeal is whether substantial evidence supports the Board's findings. Substantial evidence is such relevant evidence as "a reasonable person might accept as adequate to support a conclusion."[49]

## V. DISCUSSION

16. This case involves credibility determinations of what boils down to the battle of the experts. Accordingly, this Court does not "weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[50] The Board exclusively holds those functions,[51] and this Court "must uphold the decision of the Board unless the Court finds that the Board's decision 'exceeds the bounds of reason given the circumstances.'"[52]

17. Citing to *DiSabatino Bros. v. Wortman*, both parties correctly note that the Board is free to choose one medical expert opinion over the other.[53] *DiSabatino's* holding also allows the Board to accept "[the expert's] testimony, as enhanced by the employer's other medical testimony and by their evaluation of the

---

[49] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981); *see Perdue Farms, Inc. v. Atkinson*, 2019 WL 7373397, at *2 (Del. Super. Dec. 30, 2019).

[50] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965); *see Christiana Care Health Servs. v. Davis*, 127 A.3d 391, 394 (Del. 2015).

[51] *Noel-Liszkiewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013) (citations omitted).

[52] *Elzufon v. Lewis*, 2023 WL 152235, at *4 (Del. Super. Jan 10, 2023) (citations omitted).

[53] Claimant's Opening Brief, at 16 (citing *DiSabatino Bros. v. Wortman*, 453 A.2d 102, 106 (Del. 1982)); Employer's Answering Brief, at 11 (citing *DiSabatino Bros.*, 453 A.2d at 106).

9

claimant's credibility. As the triers of fact, they were entitled to do just that."[54] This Board did the same. And offered a full explanation of why it accepted and rejected the respective medical opinions.

18. Notably, the Board did not accept Employer's expert opinion *in toto*. In fact, the Board found in favor of Claimant as to his left shoulder injury. In this determination, the Board rejected the Employer's expert opinion that Claimant only strained or sprained his left shoulder.[55] Instead, the Board accepted the opinion of Claimant's expert that Claimant's subjective complaints, coupled with the diagnostic evidence of the left shoulder MRI, established that the left shoulder injury was causally related to the 2014 work accident, and it deemed the corresponding treatment to be reasonable.[56]

19. Conversely, as to its determination of Claimant's cervical injury, the Board did accept Employer's expert's opinion that Claimant suffered "some injury" to his neck because of the work accident but that this injury had resolved by mid-2015.[57] Here, Claimant takes issue with Dr. Gelman's reliance on the absence of medical treatment between 2015 and 2019 to opine that the neck injury had resolved. Citing to the broad holding in *McCracken v. Lewis*,[58] he proposes that the Board's

---

[54] *DiSabatino Bros.*, 453 A.2d at 106.
[55] IAB Decision, at 26–27.
[56] *Id.*
[57] *Id.* at 27–28.
[58] *McCracken v. Wilson Beverage*, 1992 WL 301985 (Del. Super. Oct. 15, 1992).

determination was based on insubstantial evidence, namely that Dr. Gelman relied on a lack of medical treatment and ignored the fact that insurance issues caused by Employer's failure to report the accident prevented access to said treatment.[59]

20.    It is true that *McCracken* held that substantial evidence did not exist to support that Board's decision in favor of that employer.[60] "If an expert witness chooses to *ignore* a person's central and medically documented *symptoms* in reaching his or her opinion without any substantial reason for ignoring such symptoms, the opinion is necessarily insubstantial."[61] But here, *McCracken* is not applicable as there is no evidence that the Employer's expert ignored Claimant's symptoms in reaching his opinion. He further acknowledged some awareness regarding Claimant's insurance issues.

21.    Moreover, the Board did not accept Dr. Gelman's opinion in a vacuum. It properly evaluated both Claimant's credibility and corresponding medical records. It rejected Claimant's testimony that he did not treat his neck after mid-2015 *because of* insurance issues. Instead, the Board focused on the fact that Claimant did not report neck pain after mid-2015 to his primary care physician.[62]

22.    The Board's denial of the bilateral carpal tunnel and right shoulder

[59] Claimant's Opening Brief, at 16.
[60] *McCracken*, 1992 WL 301985 at 7.
[61] *Id.* at 6 (emphasis added).
[62] IAB Decision, at 28.

injuries is also based on substantial evidence—Claimant's reporting and his expert's opinion. As to the former, Claimant self-reported in 2014 that he fell only on his left hand; references involving both hands were made only in later reports.[63] The Board noted that his medical records close in time to the work accident focused almost entirely on his left shoulder and neck.[64] As to the latter, the Board further found that even Claimant's medical expert acknowledged on cross-examination that if the mechanism of injury involved only the left hand, the alleged injuries to the right side would not be related to the work accident.[65] This opinion is consistent with Employer's expert that the right-sided injuries were degenerative in nature.

23. Accordingly, there was substantial evidence in the record for the Board to accept Claimant's expert opinion as to the left shoulder injuries and Employer's expert opinion as to the neck, bilateral carpal tunnel, and right shoulder injuries. The Board did not err. It considered evidence from both experts and chose to accept and reject, in part, their respective opinions. It was within its province to do so. For these reasons, the Board's Decision is **AFFIRMED.**

/s/Vivian L. Medinilla
Vivian L. Medinilla
Judge

---

[63] *Id.* at 25.
[64] *Id.*
[65] *Id.* at 25–26.