# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE                )
                                 )
    Employer-Appellant,          )
                                 )
v.                               )    C.A. No. N22A-06-003 CEB
                                 )
SHARON WILLIAMS                  )
                                 )
    Employee-Appellee.           )

Submitted: April 21, 2023
Decided: July 26, 2023

## MEMORANDUM OPINION

*Upon Appeal from the Industrial Accident Board,*
**AFFIRMED.**

John J. Klusman, Esquire, TYBOUT, REDFEARN & PELL, Wilmington, Delaware. *Attorney for Employer-Appellant State of Delaware.*

Michael G. Owens, Esquire, and Justin K. Weeks, Esquire, MORRIS JAMES LLP, Wilmington, Delaware. *Attorneys for Employee-Appellee.*

**BUTLER, R.J.**

**INTRODUCTION**

Appellant-Employer State of Delaware ("Employer") seeks review of a decision of the Industrial Accident Board ("Board") that awarded permanency benefits to Appellee-Employee Sharon Williams ("Claimant") for a head injury sustained during a work-related motor vehicle accident.

The Court finds the Board's award of permanency benefits is supported by substantial evidence. Therefore, the decision of the Board must be **AFFIRMED**.

**BACKGROUND[1]**

**A. The Accident**

In 2016, Claimant began experiencing migraine headaches and was subsequently diagnosed with "headaches with migraine features, and occipital neuralgia and she was averaging three headache days a month. . . ."[2] Claimant was on a preventative regimen consisting of 30mg a day of Cymbalta, ibuprofen, and Reglan.[3] Then, in December 2018, while working within her duties for the Employer, Claimant suffered a head injury in a motor vehicle accident.[4] That same

---

[1] The Court assumes the parties' familiarity with the facts contained in the Record and only recounts the background relevant to affirming the Board's Determination.
[2] See *Williams v. State*, No. 1482282 at 6, 18. (Del. IAB May 31, 2022) (Decision on Petition to Determine Additional Compensation Due) [hereinafter "IAB Decision"].
[3] *Id.* at 2.
[4] *Id.*

day, her symptoms as a result of the accident included nausea, head pressure, blurred vision, and she was dazed and confused.[5]

After visiting an urgent care center and her primary care physician, Claimant was referred to a neurologist at Jefferson Health, where she had been previously treated for migraines.[6] Her new symptoms were distinguishable from prior migraines as being "on the top of her head," rather than occipital.[7] So, the neurologist increased her Cymbalta dose to 90mg a day, but Claimant soon began experiencing negative side effects.[8] Accordingly, the dose was reduced, but her head injury symptoms worsened.[9] Claimant also received Botox treatments which reduced her headaches to "one to two days per month."[10]

## B. Claimant's Petition for Additional Compensation

Claimant received "medical expenses and multiple periods of total disability," but her condition continued to deteriorate.[11] So, in October 2021, Claimant filed a Petition to Determine Additional Compensation Due with the Industrial Accident

---

[5] *Id.* at 3; Hr'g Tr. at 14:17–21, 57:22–58:13.
[6] IAB Decision at 3.
[7] *Id.* at 3; Hr'g Tr. 24:6–24.
[8] IAB Decision at 3, 18; Hr'g Tr. at 22:5–11.
[9] IAB Decision at 3, 18; Hr'g Tr. at 22:12–14
[10] IAB Decision at 18; Hr'g Tr. at 107:7–17.
[11] IAB Decision at 2.

Board, seeking permanent impairment benefits related to her headaches, vestibular dysfunction, convergence insufficiency, and cognitive dysfunction.[12]

During the hearing, Claimant explained that she suffers from continuous vertigo and tends to lose her balance, has blurred and double vision, has numbness in her hands, and experiences nine severe migraines each day for 30 minutes at a time.[13] She relies on her mother's assistance for activities of daily living.[14]

Claimant was examined by both Dr. John Townsend (for the Claimant) [15] and Dr. William Sommers (for the Employer),[16] who testified via deposition. While both experts agree that Claimant had "a chronic aggravation of her preexisting migraine headaches" they diverged on other issues.[17] Where Dr. Townsend awarded 15% permanency for headaches,[18] Dr. Sommers awarded 10% permanency.[19] For

---

[12] *Id.*

[13] Hr'g Tr. at 25:14–24.

[14] *Id.* at 27:4–15.

[15] Dr. Townsend is a board-certified neurologist and testified via deposition on behalf of Claimant. *See* Deposition of John B. Townsend, M.D., Apr. 14, 2022 [hereinafter "Townsend Dep."].

[16] Dr. Sommers is a board-certified neurologist and testified via deposition on behalf of the State. *See* Deposition of William Sommers, D.O., Mar. 9, 2022 [hereinafter "Sommers Dep."].

[17] IAB Decision at 25.

[18] Townsend Dep. at 30:17–20. Dr. Townsend relies on Claimant's extensive medical history, increased severity of headaches post-accident, and her increased treatment and lack of responsiveness thereto. *Id.*

[19] Sommers Dep. 22:3–23:8. Dr. Sommers relies on the severity and frequency of Claimant's headaches. *Id.*

convergence insufficiency, Dr. Townsend awarded 14% permanency,[20] while Dr. Sommers declined to assign a rating.[21] For vestibular dysfunction, Dr. Townsend gave a 16% permanency rating,[22] while Dr. Sommers declined to assign a rating.[23] For cognitive dysfunction, Dr. Townsend awarded a 10% permanency,[24] while Dr. Sommers declined to assign a rating.[25]

Finally, Dr. Townsend testified that Claimant's condition was causally related to the employment-related injury. Dr. Sommers believed that Claimant suffered from some psychiatric or other issues and her condition was not causally related to the auto accident.

## C. The Board's Determination

In May 2022, the Board issued its determination. It concluded that Claimant met her burden of proof, showing she sustained permanent injuries as a result of the

---

[20] Townsend Dep. 35:8–36:18. Dr. Townsend relies on his own observations of Claimant and those of other doctors, including the optometrist who identified the condition. *Id.*

[21] Sommers Dep. at 25:7–26:9. Dr. Sommers believes Claimant's complaints of double and blurry vision are implausible. *Id.*

[22] Townsend Dep. at 34:5–35:3. Dr. Townsend relies on Claimant's consistent complaints of vertigo, rapid uncontrollable eye movement accompanied by nausea, and American Medical Association guidelines. *Id.*

[23] Sommers Dep. at 24:7–25:3. Dr. Sommers does not think Claimant's symptoms had been validated because she was not subjected to any "objective vestibular testing," and he believed there was "no organic basis to support her symptoms." *Id.*

[24] Townsend Dep. at 37:12–38:18. Dr. Townsend relies on Claimant's "persistent complaint[s]" and his own observations. *Id.*

[25] Sommers Dep. at 26:10–27:11. Dr. Sommers does not believe there is "any objective evidence of any memory or cognitive impairment." *Id.*

4

2018 motor vehicle accident and awarded Claimant 15% permanent impairment for the headaches, 14% for convergence insufficiency, and 16% for vestibular dysfunction.[26] It did not grant an award for cognitive impairment, finding the matter premature.[27] But it noted specifically that it "accepts Dr. Townsend's opinion as more reliable Dr. Sommer's opinion in this case."[28]

## STANDARD OF REVIEW

Review of a Board decision "is limited to an examination of the record for errors of law and a determination of whether substantial evidence exists to support the Board's findings of fact and conclusions of law."[29] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[30] Substantial evidence is "more than a scintilla, but less than a preponderance of the evidence."[31] The Board's finding of substantial evidence "is a low standard to affirm and a high standard to overturn."[32] "Weighing the evidence, determining the credibility of witnesses, and resolving any conflicts in the testimony

---

[26] IAB Decision at 27.
[27] *Id.*
[28] *Id.* at 25.
[29] *Sheppard v. Allen Family Foods*, 279 A.3d 816, 826 (Del. 2022) (internal citations omitted).
[30] *Powell v. O TAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (internal quotation marks and citations omitted).
[31] *Id.*
[32] *Hanson v. Del. State Pub. Integrity Comm'n*, 2012 WL 3860732, at *7. (Del. Super. Aug. 30, 2012).

are functions reserved exclusively to the Board."[33]   "Only when there is no satisfactory proof to support a factual finding of the Board may the Superior Court . . . overturn that finding."[34]

### ANALYSIS

The Employer argues that the Board's determination should be reversed because: (1) it failed to articulate and apply a proper causation standard to determine whether Claimant's symptoms were causally related to the work accident; and (2) its decision that Claimant's condition was consistent with her prior condition was not supported by substantial evidence.

**A. The Board sufficiently articulated that its permanent impairment findings were causally related to the work accident.**

Under 19 *Del. C.* § 2345, the Board "shall hear and determine the matter in accordance with the facts and the law and state its conclusions of fact and ruling of law."[35]  The Employer argues that the Board did not clearly articulate or apply the appropriate legal standard for permanent impairment as required by 19 *Del. C.* § 2345.[36]  This Court has held that, although the reasoning of the Board must be clear,

> [W]here the testimony has been explained as part of the preface to the findings of fact and law and where the Board's decision contains the

---

[33] *Noel-Liszkiewicz v. La-Z Boy*, 68 A.3d 188, 191 (Del. 2013).
[34] *Id.*
[35] 19 *Del. C.* § 2345.
[36] Appellant's Opening Br. at 16–17.

> appropriate details which led to its reasoning, this Court will not reverse simply because the Board did not repeat those facts in its 'Findings.'[37]

So, it is enough that the Board's decision contains the appropriate details that led to its reasoning.[38]  The Court is capable of inferring from the Board's conclusions what the underlying findings must have been.[39]  And remand of a permanency issue will not be ordered if it will merely produce "a more technically precise opinion" rather than bring about a different result.[40]

Here, taken together, the "Permanent Impairment" and "Summary of the Evidence" sections of the Board's decision make it clear that the Board evaluated Dr. Townsend's and Dr. Sommers' testimony, personally observed Claimant, and concluded that Dr. Townsend's testimony was more credible.[41]  A remand of the permanency issue would do nothing more than force the Board to produce a more technically precise opinion.  Accordingly, the Court finds the Board has provided sufficient explanation for its findings to meet the requirements of 19 *Del. C.* § 2345.

---

[37] *Justison v. Home Health Corp.*, 1999 WL 463702, at *4 (Del. Super. May 19, 1999).

[38] *Washington v. Del. Transit Corp.*, 226 A.3d 202, 211 (Del. 2020) (internal citations omitted).

[39] *Johnson v. E.I. Dupont de Nemours & Co.*, 2000 WL 33115805, at *4 (Del. Super. Oct. 4, 2000), *aff'd* 768 A.2d 469 (Del. 2001).

[40] *Id.*

[41] The Board is free to choose between conflicting medical opinions. *See DiSabatino Brothers, Inc. v. Wortman*, 453 A.2d 102, 106 (Del. 1982).

**B. The Board's finding of permanent impairment is supported by substantial evidence.**

Weighing the evidence and determining questions of credibility are functions reserved exclusively for the Board.[42] "When, as here, there is contradictory expert testimony supported by substantial evidence, it is within the Board's discretion to accept the testimony of one physician over another."[43] The State argues that the Board failed to articulate its rationale for accepting Dr. Townsend's testimony over Dr. Sommers' testimony.[44] The Board, however, does so quite clearly. Regarding headaches:

> [T]he evidence points to a more serious chronic headache condition then Dr. Sommers allowed and therefore Dr. Townsend's rating reflects this condition more accurately.[45]

Regarding convergence insufficiency:

> Dr. Sommers did not provide a rating. The Board finds that this is not helpful, particularly when one of the reasons for this opinion could have been resolved with a complete review of the medical records. . . . Dr. Sommers does provide an opinion that some of Claimant's symptoms are not causally related to the accident because they arose several years after the accident. However the evidence suggests symptoms related to these two impairments did arise early on or at least during 2019. . . . Dr. Sommers was not aware of the treatment Claimant had for vision related complaints.[46]

---

[42] *Noel-Liszkiewicz*, 68 A.3d at 191.
[43] *Cottman v. Burris Fence Constr.*, 2006 WL 3742580, at *3 (Del. Dec. 19, 2006) (TABLE) (internal quotation marks and citations omitted).
[44] Appellant's Opening Br. at 20–28.
[45] IAB Decision at 25.
[46] *Id.* at 25–26.

Regarding vestibular dysfunction:

> Dr. Townsend found objective signs of vertigo on examination . . . some of these findings showed up on early examinations, which confirms they were present early on as opposed to what Dr. Sommers stated.[47]

The Court will defer to the Board's reasoning.

The Employer further contends that Claimant's increase in symptoms following the accident is inconsistent with expert testimony.[48] Specifically, the Employer argues Ms. Williams' symptoms should not have increased over time. But Dr. Townsend's testimony, on which the Board relied, explains that a patient may get better with therapy, but then decline after that therapy stops—which is the case here.[49] Further Claimant's symptoms and diagnoses from multiple physicians have been consistent.[50]

The Employer also argues that the Board failed to address Claimant's pre-existing condition and psychiatric issues.[51] But the Board "is not obligated to issue decisions that scrutinize every shred of evidence on every issue presented to the Board."[52] The Record shows that both experts addressed Claimant's pre-existing

---

[47] *Id.* at 26.
[48] Appellant's Opening Br. at 20–26.
[49] IAB Decision at 14; Townsend Dep. at 60:19–61:8.
[50] IAB Decision at 9–10; Townsend Dep. at 27:12–28:10.
[51] Appellant's Opening Br. at 26–28.
[52] *Lee v. UE&C Catalytic, Inc.*, 1999 WL 459257, at *4 (Del. Super. Mar. 31, 1999).

migraines in their impairment rationales, and Dr. Townsend addressed Claimant's possible obsessive-compulsive disorder in his deposition testimony.[53]  That is sufficient.   Accordingly, the Court finds the Board decision is supported by substantial evidence and free from legal error.

## CONCLUSION

For the foregoing reasons, the decision of the Industrial Accident Board is **AFFIRMED**.

**IT IS SO ORDERED.**

**/s/ Charles E. Butler**
Charles E. Butler, Resident Judge

---

[53] IAB Decision at 25 ("Both experts agree that Claimant has an impairment due to her chronic headaches, or at a minimum a chronic aggravation of her preexisting migraine headaches.  The difference is the amount of rating."); Townsend Dep. at 82:20–84:13.