# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SANTIAGO MENDOZA,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
Claimant-Appellant,⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀C.A. No. N22A-05-003 VLM
TALARICO BUILDING SERVICES,⠀)
INC., d/b/a SERVICE MASTER⠀⠀)
CLEANING,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
Employer-Appellee.

## ORDER

Submitted: December 6, 2022
Decided: March 30, 2023

*Upon Consideration of Appellant's Appeal of the Decision of the Industrial Accident Board*, **AFFIRMED**.

William R. Stewart, III, Esquire, Gary S. Nitsche, Esquire
Nitsche & Fredericks, LLC, Wilmington, DE.  *Attorneys for Appellant*.

Maria Paris Newill, Esquire,
Heckler & Frabizzio, Wilmington, DE.  *Attorney for Appellee*.

**MEDINILLA, J.**

# INTRODUCTION

Appellant Santiago Mendoza ("Claimant") appeals a decision of the Industrial Accident Board ("Board") that denied his Petition to Determine Additional Compensation Due and granted Employer's Termination Petition to set aside the parties' original agreement for workers' compensation benefits under Rule 60(b)[1] upon a finding that he engaged in fraud in pursuit of said benefits. Upon consideration of the arguments, submissions of the parties, and the record in this case, the Board's decision is **AFFIRMED.**

## FACTUAL AND PROCEDURAL HISTORY[2]

1. Claimant is a non-English speaking individual,[3] who has lived in the United States for almost thirty years.[4] Over twenty years ago, in 2001, he was involved in a work accident in New York, where a 60-pound boulder struck him on the head, causing him to lose consciousness.[5] As a result of that accident, Claimant did not work and instead received compensation for total disability from 2001 until

---

[1] Del. Super. Ct. Civ. R. 60(b).

[2] The recitation of the facts is based upon the submission of the parties, including the transcript from the Industrial Accident Board's hearing on March 25, 2022.

[3] At all relevant times, Claimant testified with the assistance of a court-certified interpreter and was represented by counsel.

[4] Industrial Accident Board's Hearing Transcript, IAB No. 1476099, at 17 (Del. I.A.B. Mar. 25, 2022) [hereinafter IAB Tr.].

[5] *Id.*, at 18.

2007.[6]

2.      From 2007 through 2015, Claimant did not work.[7]  In 2016, he requested his primary care physician issue him a total disability slip, and Claimant reported his occupation as "disabled" on paperwork completed for St. Francis Hospital.[8]  Claimant also acknowledged to the Board that he receives ongoing social security benefits.[9]

3.      In 2017, Talarico Building Services, Inc., d/b/a Service Master Cleaning ("Employer") hired Claimant as a floor technician helper, which required repeated bending, twisting, and lifting.[10]  Claimant did not report any physical restrictions or disabilities in his application for employment.[11]

4.      On July 16, 2018, Claimant suffered a slip-and-fall while cleaning and buffing floors, where he bent down to plug in a piece of machinery when he slipped and fell, landing on his buttocks.[12]  Claimant's boss witnessed the fall and helped him up to continue working, and, within twenty minutes of the fall, Claimant complained of experiencing blurry vision, dizziness, nausea, and pain in both his

---

[6] Industrial Accident Board's Decision, IAB No. 1476099, at 4 (Del. I.A.B. Apr. 1, 2022) [hereinafter IAB Decision].

[7] Claimant represented in discovery that he was not working from 2007 to 2015 but later testified at the IAB hearing that he worked during this period occasionally for cash.  IAB Tr., at 26–28.

[8] IAB Decision, at 5.

[9] *Id.*, at 6.

[10] IAB Tr., at 61.

[11] *Id.*, at 62.

[12] IAB Decision, at 3.

back and neck.[13] Employer acknowledged a compensable soft-tissue injury to his neck and back,[14] and paid worker's compensation benefits, including medical expenses.[15]

5.    One month after his fall, in August of 2018, Claimant was involved in a motor vehicle accident, which required ambulance transport for medical treatment.[16] The chief complaint made by Claimant at that time was "neck pain."[17] Diagnostic testing, including a cervical CT scan, was performed, showing foraminal stenotic changes at C5–6 and C6–7 (degenerative in nature).[18]

6.    Three years after his fall, on October 11, 2021, Claimant underwent a three-level cervical fusion performed by Dr. James Zaslavsky, a board-certified orthopedic surgeon.[19] Claimant filed a Petition for Additional Compensation Due seeking to have the Board determine that the surgery was reasonable, necessary, and causally related to the July 2018 work accident, and for the payment of compensation for the period of recovery from the surgery.[20]

7.    In August 2021, Employer opposed Claimant's Petition and sought a

---

[13] IAB Decision, at 3.
[14] *Id.*, at 2.
[15] *Id.*
[16] Dr. Gelman's Dep., at 51.
[17] *Id.*
[18] *Id.*, at 51–53.
[19] IAB Decision, at 2.
[20] *Id.*

4

determination that the surgery was unrelated to the July 2018 injury.[21] Employer further filed a Petition for Review, seeking to have the Board review and set aside the parties' original agreement as to the compensability of Claimant's injuries based on assertions of fraud, and to bar Claimant from future filings against Employer.[22]

8.    On March 25, 2022, the Board held a hearing on both Petitions. The Board heard live testimony from Claimant and deposition testimony from his expert, James Zaslavsky, D.O.[23] Employer presented live testimony from an investigator, a Human Resources Administrator, and a Senior Claims Specialist Adjuster, as well as deposition testimony from its medical expert, Dr. Andrew Gelman, D.O., also board-certified.[24]

9.    On April 1, 2022, the Board issued a 37-page decision.[25] As to the Claimant's Petition for Additional Compensation Due, the Board denied the compensability of the cervical surgery and determined that Claimant failed to meet his burden of establishing the compensability of the cervical surgery.[26] It accepted Dr. Gelman's opinion as "the more informed, factually accurate and persuasive than that of Dr. Zaslavsky based largely on Claimant's own failure to honestly disclose

---

[21] IAB Decision, at 2.
[22] *Id.*
[23] IAB Tr., at 1–2.
[24] *Id.*
[25] *See* IAB Decision.
[26] *Id.*, at 33–34.

5

his extensive history of injury and treatment, and Dr. Zaslavsky's inability to accurately appreciate it from a record review alone. . . ."[27] The Board also considered that Claimant had not reported the subsequent motor vehicle accident to his treating surgeon, nor provided an accurate report of his own medical history.[28]

10. As to Employer's Petition for Review, the Board found that the record was sufficient to justify its intervention on the basis of fraud.[29] The Board considered Employer's two-fold request: that the Board re-open and strike the agreement as to compensability and dismiss Claimant's petition for additional compensation as well as *any future claims* that Claimant may file with prejudice.[30] Because there was no dispute that Claimant suffered a fall, as witnessed by another individual, the Board declined to preclude future claims and noted that there was limited testimony before it as to a separate issue of Claimant's low back.[31] Instead, the Board determined that it was appropriate to strike the underlying agreement accepting the compensability of a lumbar and cervical spine strain and sprain, but allowed Claimant 60 days to file a new petition to attempt to establish compensability as to any other issues he believed were compensable against

---

[27] IAB Decision, at 33–34.
[28] *Id.*, at 11.
[29] *Id.*, at 34.
[30] *Id.*, at 36.
[31] *Id.*

Employer.[32]  The Board further credited Employer for all monies expended on benefits to Claimant based on the prior agreement.[33]

11.  On May 4, 2022, Claimant filed a timely notice of appeal with this Court.  On September 16, 2022, Claimant filed his Opening Brief.  On October 17, 2022, Employer filed its Answering Brief, and on November 21, Claimant filed his Reply Brief.  This Court was assigned this appeal on December 6, 2022.  This matter is ripe for decision.

**PARTIES' CONTENTIONS**

12.  Claimant contends that the Board erred in both finding Employer's expert more credible, and in its legal application of the facts on Employer's Petition for Review as to the allegations of fraud.[34]  Employer maintains that the Board's decision is free from legal error and supported by substantial evidence as to both petitions.[35]  It argues the Board properly considered and accepted one expert opinion over the other.[36]  And that the decision was based not only on Dr. Gelman's opinion, but also on various factors, including Claimant's incredulous inability to recall his

---

[32] On May 12, 2022, Claimant filed a new Petition to Determine Compensation Due with the Board; that Petition is stayed pending the outcome of this appeal.  Claimant-Below/Appellant's Opening Br. on Appeal, at 3 [hereinafter Claimant's Opening Br.].
[33] IAB Decision, at 37.
[34] Claimant's Opening Br., at 11–15.
[35] Employer-Below/Appellee's Answering Br., at 28–32 [hereinafter Employer's Answering Br.].
[36] *Id.* at 32–36.

own medical history as well as Dr. Zaslavsky's scant and inaccurate knowledge of the same.[37]

## STANDARD OF REVIEW

13. On an appeal from the Board, this "[C]ourt must determine whether the findings and conclusions of the Board are free from legal error" and whether they are "supported by substantial evidence in the record."[38] Questions of law are reviewed *de novo*.[39] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[40] "A decision on a motion to reopen rendered pursuant to Superior Court Civil Rule 60(b) by the Board will be set aside on appeal only for an abuse of discretion."[41]

## DISCUSSION

14. Under the Worker's Compensation Act, employers are required to pay for medical "services, medicine and supplies" that are reasonable and necessary and

---

[37] Employer's Answering Br., at 18–22.

[38] *Wilson v. Unemployment Ins. Appeal Bd.*, 2011 WL 3243366, at *2 (Del. Super. July 7, 2011) (citing *Unemployment Ins. Appeal Bd. v. Martin*, 431 A.2d 1265, 1266 (Del. 1981); *Pochvatilla v. United States Postal Serv.*, 1997 WL 524062, at *2 (Del. Super. June 9, 1997); 19 *Del. C.* § 3323(a)).

[39] *Kelley v. Perdue Farms*, 123 A.3d 150, 152–53 (Del. Super. 2015) (citing *Vincent v. E. Shore Markets*, 970 A.2d 160, 163 (Del. 2009)).

[40] *Byrd v. Westaff USA, Inc.*, 2011 WL 3275156, at *1 (Del. Super. July 29, 2011) (quoting *Oceanport Industries Inc., v. Wilm. Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994)).

[41] *Barber v. F.W. Woolworth's Co.*, 1996 WL 769221, at *3 (Del. Super. Nov. 15, 1996).

are causally related to an employee's compensable injury.[42]  Ordinarily, this determination boils down to the battle of the experts.  But here, this case also involves credibility determinations of Claimant.  Accordingly, this Court does not "weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[43]  The Board exclusively holds those functions,[44] and this Court "must uphold the decision of the Board unless the Court finds that the Board's decision 'exceeds the bounds of reason given the circumstances.'"[45]

## Claimant Failed to Meet Burden for Additional Compensation

15.  The Board first offered a full explanation of why it accepted and rejected the respective medical opinions, including the bases of the opinions from Drs. Zaslavsky and Gelman.[46]  Dr. Zaslavsky testified that he initially met with Claimant in 2019, about one year after his 2018 slip and fall.[47]  According to Claimant, he landed on his buttocks, after which he developed back and right leg pain.[48]  When seen again in March of 2020, Claimant's findings showed a

---

[42] *See* 19 *Del. C.* § 2322(b); *Nobles-Roark v. Burner*, 2020 WL 4344551, at *2 (Del. Super. July 28, 2020) ("Accordingly, the IAB's inquiry was governed . . . by the Workers' Compensation Act, which requires employers to pay for reasonable and necessary medical 'services, medicine and supplies' causally connected with an employee's compensable workplace injury.").

[43] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965); *see also Christiana Care Health Servs. v. Davis,* 127 A.3d 391, 394 (Del. 2015).

[44] *Noel-Liszkiewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013) (citations omitted).

[45] *Elzufon v. Lewis*, 2023 WL 152235 (Del. Super. Jan 10, 2023) (citations omitted).

[46] *See* IAB Decision, at 29–34.

[47] *Id.*, at 7.

[48] *Id.*

9

progressive worsening of his cervical condition and issued Claimant a no-work slip for total disability.[49] Dr. Zaslavsky also recommended a cervical discectomy and fusion to remove the damaged discs caused by severe stenosis, performed in October of 2021.[50]

16. While it is true that a treating physician may be afforded deference,[51] "[w]hen conflicting expert opinions are each supported by substantial evidence, the Board is free to accept one opinion over the other opinion."[52] Accordingly, the Board found that "Dr. Zaslavsky's belief that Claimant developed right upper extremity symptoms for the first or even one of the first times after this slip and fall [wa]s not factually accurate [n]or reliable as a basis to establish causation herein."[53] Instead, it considered Dr. Gelman's opinion, memorialized in 82 pages of deposition testimony.[54]

17. Dr. Gelman examined Claimant twice.[55] During his first examination on January 23, 2019, Claimant neither provided any information as to his past medical providers,[56] nor did he report that he had been involved in an auto accident

---

[49] IAB Decision, at 7.
[50] *Id.*, at 9.
[51] *See Diamond Fuel Oil v. O'Neal*, 734 A.2d 1060, 1065 (Del. 1999).
[52] *Standard Distributing, Inc. v. Hall*, 897 A.2d 155, 158 (Del. 2006).
[53] IAB Decision, at 32.
[54] *See* Dr. Gelman's Dep.
[55] *Id.*, at 6.
[56] *Id.*, at 55.

after the 2018 slip-and-fall.[57]  Based on the information provided, Dr. Gelman found that even if Claimant had suffered cervical injury from the 2018 work slip-and-fall accident, it would have been a soft-tissue strain/sprain, which had resolved soon thereafter.[58]

18.    During Dr. Gelman's second examination of Claimant on July 28, 2021,[59] Claimant acknowledged his 2001 accident but suggested that it caused only a right shoulder injury.[60]  He denied any other accidents or injuries other than that 2001 accident.[61]  Dr. Gelman again found that Claimant's cervical and lumbar injury would not have been anything more serious than soft tissue strain/sprain, which had resolved.[62]  In reaching this conclusion, Dr. Gelman explained that he ignored Claimant's subjective medical history as it was not "credible,"[63] and he only took Claimant at "face value."[64]

19.    In preparation for the deposition, Dr. Gelman also reviewed the lengthy history of Claimant's medical records from 2014 to 2019.[65]  Relying on Claimant's extensive history of injuries and medical records, and the doctor's own

---

[57] Dr. Gelman's Dep., at 58.
[58] *Id.*, at 56.
[59] *Id.*, at 60.
[60] *Id.*
[61] *Id.*, at 61.
[62] *Id.*, at 62.
[63] *Id.*, at 63.
[64] *Id.*, at 64.
[65] *Id.*, at 7–53.

examinations,[66] Dr. Gelman testified that the three-level cervical fusion performed by Dr. Zaslavsky in October of 2021 was not causally related to the 2018 work accident; rather, the surgery was "elective."[67] The Board accepted his opinion.

20.     In addition to the Board's ability to choose one medical expert opinion over the other,[68] our Supreme Court has also held that the Board may accept "[the expert's] testimony, as enhanced by the employer's other medical testimony and by their evaluation of the claimant's credibility. As the triers of fact, they were entitled to do just that."[69]

21.     The Board found Claimant incredulous.[70] Claimant confirmed having seen a host of physicians over the years from prior work-related injuries, but claimed he was not informed that—on three separate occasions—his medical records mentioned the need for surgical consultations.[71] The Board did not accept his testimony as true. Claimant denied any neck problems prior to July of 2018 despite having undertaken cervical injections in 2002,[72] and medical records from two treating physicians that documented he was permanently and totally disabled as it

---

[66] Dr. Gelman's Dep., at 7.

[67] *Id.*, at 64–66.

[68] *Glanden v. Land Prep, Inc.*, 918 A.2d 1098, 1102 (Del. 2007) (citing *DiSabatino Bros. v. Wortman*, 453 A.2d 102, 106 (Del. 1982)); *see also Bullock v. K-Mart Corp.*, 1995 WL 339025, at *3 (Del. Super. May 5, 1995).

[69] *DiSabatino Bros.*, 453 A.2d at 106.

[70] IAB Decision, at 29–30.

[71] *Id.*, at 4.

[72] IAB Tr., at 21.

related to his 2001 work accident, including to his neck.[73] And third-party litigation taken on his behalf documented claims that he had suffered chronic neck pain with a history of compressed discs and pain down his arms and into his hands.[74] On this record, it was within the Board's purview to give Claimant's testimony little to no weight.

22.    In sum, Claimant's argument is without merit. First, it is inaccurate to state that "Dr. Zaslavsky was clear that Claimant ha[d] a year of cervical spine issues, but hit [sic] was this work accident that caused the accelerated need for his surgery."[75] Claimant had more than a year of cervical spine issues as highlighted by the Employer and the Board. Second, the Court is not persuaded by Claimant's suggestion that the subsequent motor vehicle accident and surgical references in the Claimant's prior medical records were merely "red herrings."[76] Both were fair considerations on the issues of compensability and causation before the Board.

23.    The Board had substantial evidence to rely upon Dr. Gelman's opinion that the surgery was not related to the work accident of July 2018, and thus not compensable. There is no basis to disturb the Board's decision as it is supported by substantial evidence.

---

[73] IAB Decision, at 32.
[74] IAB Tr., at 22.
[75] Claimant's Opening Br., at 14.
[76] Id.

13

**Employer Established Burden for Review and Relief Under Rule 60(b)**

24.     The Court now turns to Claimant's argument that the Board erred in its findings under Superior Court Civil Rule 60(b), which provides relief from a judgment due to "fraud, misrepresentation or other misconduct of an adverse party."[77]  Here, the Board considered Employer's Petition for Review to re-open the agreement, "akin to a motion to re-open a prior award . . . ."[78]  Applying the proper Rule 60(b) standard,[79] the Board determined Employer had met its burden,[80] and afforded relief.[81]

25.     Claimant does not dispute that the Board properly considered Employer's request under Rule 60(b).  Instead, this Court is asked to focus on whether the Board properly considered the elements of reliance and damages in finding fraud.[82]  He argues that (1) Employer did not establish reliance on Claimant's false representations because Dr. Gelman concurred with a finding that supported

---

[77] Claimant's Opening Br., at 11 (citing Super. Ct. Civ. R. 60(b)).

[78] IAB Decision, at 34.

[79] *Potts v. State*, 2002 WL 555065, at *1 (Del. Super. Apr. 11, 2002) (citing *Barber v. F.W. Woolworth's Co.*, 1996 WL 769221, at * 4 (Del. Super. Nov. 15, 1996)).

[80] *See id.*, at *1 (citation omitted) ("The burden is on the movant to establish the basis of relief [under Rule 60(b)].").

[81] IAB Decision, at 35 ("The Board . . . is satisfied that the present record is sufficient to justify Board intervention on the basis of fraud.").

[82] *Id.* (citing *Lord v. Sauder*, 748 A.2d 393 (Del. 2000)) ("A party claiming fraud must establish hat [sic] the deceiver made a false representation, that the deceiver knew they made a false assertion or acted with a reckless indifference to the truth; there was an intent to deceive the other party; the other party acted in justifiable reliance upon the representation and damages resulted as a result of the reliance.").

14

the initial agreement for workers' compensation benefits acknowledging an injury from the 2018 slip-and-fall, and (2) Employer did not suffer damages because Employer stopped making payments after 2019, consistent with when Dr. Gelman opined Claimant's injury had resolved.[83]  Both are without merit.

26.     Claimant's first contention is that there was no justifiable reliance. More specifically, "no reliance of significance because what they did is what carriers do," and that the Employer's failure to further investigate was simply "buyer's remorse," such that Employer "in this circumstance did not use those protections, that is now *not* [Claimant's] burden to carry."[84]  This was not buyer's remorse.

27.     On *de novo* review, this Court finds that the Employer relied on material misrepresentations that led the Employer to both hire Claimant and enter into an initial agreement with him.  Employer presented evidence that it would not have hired Claimant if he had been truthful about his medical conditions,[85] nor would it have accepted Claimant's workers' compensation claim had it been informed about his medical history and prior diagnoses.[86]

28.     Claimant's next claim that Employer suffered no damages because it only paid out a portion consistent with Dr. Gelman's opinion misses the mark.

---

[83] Claimant's Opening Br., at 11.
[84] Claimant's closing argument, IAB Tr. 134–35 (emphasis added).
[85] IAB Decision, at 36.
[86] *Id.*

15

Although the Board did not explicitly address the issue of damages, in finding for Employer—including but not limited to crediting it for past benefits paid—this Court may infer that the Board considered damages in its decision.[87] Thus, the Board did not abuse its discretion when it determined to re-open the agreement and set it aside.[88]

29.     Furthermore, although the Board found fraud under Rule 60(b)(3), this Court may affirm on the basis of a different rationale than that of the Board.[89] Even in the absence of fraud, Rule 60(b)(3) provides relief from a final judgment due to "misrepresentation or other misconduct of an adverse party."[90]

30.     Here, the record is replete with findings from the Board that Claimant made material *misrepresentations* regarding Claimant's past medical history, with his own treating physicians, including Dr. Zaslavsky, as well as the Human

---

[87] *See Chrysler Corp. v. Alston*, 702 A.2d 925, 1997 WL 597120, at *2 (Del. Sept. 22, 1997) (Table) ("[W]hile the [Industrial Accident] Board did not explicitly state in its decision that there was fraud, this conclusion is implicit in the Board's finding . . . . We affirm the Superior Court's conclusion that a determination of fraud can be drawn from the facts found by the Board.").

[88] *See Potts*, 2002 WL 555065, at *1 ("The Board's decision on a motion to reopen will be set aside on appeal only for an abuse of discretion.").

[89] *Chrysler Corp.*, 702 A.2d 925, 1997 WL 597120, at *2 (citing *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1105 (Del. 1988)) ("In affirming a decision of the [Industrial Accident] Board, the Superior Court may provide legal reasoning different from that of the Board, so long as the Superior Court does not fall 'into the error of weighing the evidence, determining questions of credibility and making factual findings and conclusions.'").

[90] Del. Super Ct. Civ. R. 60(b)(3).

Resources Administrator, the Senior Claims Specialist Adjuster, and Dr. Gelman.[91]

In noting its bases for its ruling, the Board determined that:

> [Claimant] failed to provide the information when there were interpreters used, when there were not interpreters used, when the forms…were in English…[and] in Spanish; *the one universal truth seems to be that Claimant was intent on not providing the details of his ongoing cervical condition to anyone*. *He continued this pattern of omission and explicit deceit* in his specific reports to the insurance adjuster in this matter . . . .[92]

> He was *similarly evasive in his communications* or lack there of [sic] with the human relations representative from Employer, the Spanish speaking Kelly Navarrete, whose uncontroverted testimony herein is that she was working to help Claimant return to work in positions identified to accommodate his physical limitations. . . .[93]

> Claimant, without explanation as to why he behaved as such, has *admitted that he was dishonest in his discovery responses* to Employer's counsel because despite initially indicating he was unemployed from 2007-2015, he admitted herein that he worked for several employers, often for cash, throughout this time period. In short, the Board finds it difficult to reconcile or find credible almost anything that Claimant said. . . .[94]

> The Board, *finding Claimant's conduct herein as it relates to blatant lies and equally blatant omissions*, is satisfied that the present record is sufficient to justify Board intervention on the basis of fraud. . . .[95]

---

[91] IAB Decision, at 35–36.
[92] *Id.*, at 30 (emphasis added).
[93] *Id.* (emphasis added).
[94] *Id.* (emphasis added).
[95] IAB Decision, at 34 (emphasis added).

17

31. Beyond misrepresentations of past medical history, the miscommunications to his Employer, and admissions of dishonesty and/or omissions made during the discovery of his worker's compensation case, his testimony before the Board establishes further evidence of incredulity.[96] His testimony that he experienced no cervical or lumbar issues before the 2018 work accident,[97] is wholly inconsistent with nearly twenty years of medical records that say otherwise.

32. Claimant's suggestion that the Board's decision will have a chilling effect on future claims filed by employees is also without merit.[98] The facts here involved more than a poor historian hampered by a language barrier. The evidence supported findings that his misrepresentations were, at best, chronically evasive, at worst, fatally fraudulent. Under Rule 60(b), Employer is entitled to relief.

## CONCLUSION

33. Substantial evidence supports the Board's determination that Claimant failed to meet his burden for additional compensation. The Board did not abuse its

---

[96] In response to cross-examination and questions from the Board regarding his past medical history, more than ten times, Claimant indicated that he did not remember his past medical treatment: "I don't recall–I don't recall"; "I don't remember this. I don't have memory of this"; "No, no. [I don't remember]"; "No, I don't recall that"; "I'm just learning now"; "I don't remember"; "I don't recall this much. I can['t] give an answer because I don't remember"; "I don't recall the exact time"; "I don't recall that. [W]ell, I don't have any–in my mind what that–the doctors or the places that I had the treatment"; and "I don't remember." IAB Tr., at 21–28.

[97] *Id.*, at 14, 20.

[98] *See* Claimant's Opening Br., at 13.

discretion in its determination that Employer met its burden under Rule 60(b).  There is no error of law.  The Board's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla

Vivian L. Medinilla
Judge